CASE 44—PETITION EQUITY—OCTOBER 17.

83  297
94  321

# Willoughby, &c., v. Motley.

APPEAL FROM ALLEN CIRCUIT COURT.

BASTARDS—AGREEMENTS TO MAKE THEM HEIRS.—An agreement by the father with the mother of a bastard to make the child his heir as if born in lawful wedlock does not entitle the child to inherit the father's estate in the absence of a compliance with section 17, chapter 31, General Statutes; nor does the fact that the father gave the child his name, reared him and held him out to the world as his child, confer upon the child the power to inherit his property.

WILKINS & SIMS AND EDWARD W. HINES FOR APPELLANTS.

1. The circumstances proved show an enforceable contract by the father with the mother of his bastard child to support the child, and make her his heir as if born in lawful wedlock. Such an agreement can be enforced by the child. (Clark v. McFarland, 5 Dana, 47; Burgen v. Straughan, 7 J. J. Mar., 583.)

2. Even if the agreement can not be specifically enforced, the child is entitled to recover for a breach of it. (Benge v. Hiatt's Adm'r, 6 Ky. Law Rep., 714.)

3. The proof shows that the father was prevented from making provision for his daughter, by will or otherwise, by reason of appellee's agreement to divide the estate with her. The appellee should, therefore, be treated as holding one-half of the estate in trust for his sister. (Perry on Trusts, section 181; Caldwell v. Caldwell, 7 Bush, 515.)

JAMES A. MITCHELL FOR APPELLEE.

1. The father, by treating his bastard daughter as if she were his legitimate child, and holding her out to the world as such, did not vest her with the right to inherit his estate. The statute points out the only way in which one person can be made the heir of another. (General Statutes, page 374.)

2. The plaintiffs fail to establish an agreement by the defendant to divide his father's estate with his sister; but if the agreement had been established it could not be enforced, the subject-matter of the contract having only a potential existence. (Wheeler's Ex'r v. Wheeler, 2 Met., 475.)

3. To enable either party to compel the specific execution of a contract, it must be mutually binding. (2 Mon., 345; 3 Bush, 697.)

·4. Part performance of a contract not founded on a valuable consideration will not bind the party to a full performance. (3 Bush, 298.)

·5. The mere expression of a desire by the father that his illegitimate daughter should share in his estate as if an heir, does not impose upon the heir receiving the estate the burden of carrying into execution the desire of his ancestor. (Perry on Trusts, 2d ed., section 181.)

٥6. The case of Caldwell v. Caldwell, 7 Bush, 515, distinguished from the case at bar.

.JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is an action by Sallie Willoughby and her husband, W. W. Willoughby, against E. C. Motley, only son and heir-at-law, and also administrator of the estate of James Motley, who died intestate, to recover judgment for one-half of $1,560.39, the alleged balance found in his hands after settlement of his accounts, and for an equal division of the real estate left by the intestate.

It is alleged in the petition and amended petitions that Sallie Willoughby, about fifty-one years of age, is the illegitimate daughter of James Motley, deceased, and the judgment is prayed for upon two distinct grounds.

First, it is stated that, when she was between one and two years of age, James Motley, recognizing her as his child, and in consideration of the moral duty arising therefrom, and the further consideration that her mother would and did give him the possession and control of Sallie, agreed and promised to raise, educate, adopt, and make her an heir of his estate as if she had been born in lawful wedlock; and the plaintiffs say that, in pursuance of that agreement, he did take, rear, and gave her his name,

and held her out as his child, which was, in effect, adopting and giving her power of inheritance as to his property.

In the second paragraph they say it was agreed between the deceased, the plaintiffs, and defendant, that, after the death of James Motley, his estate should be equally divided between Sallie and E. C. Motley, and by reason of that agreement and the promise of E. C. Motley that he would so divide the estate with her, upon which James Motley implicitly relied, the latter refrained from and was prevented making a will securing her a full share of his estate, which he intended to do, and would have done but for the deception and fraud of E. C. Motley, who, it is alleged, was well acquainted with the relation that existed between Sallie and James Motley, and of his intention and desire to provide for her an equal share of his estate.

There is evidence showing that when she was of tender age the mother of James Motley took Sallie from her mother and carried her home, and cared for and treated her as a grandchild, and that after the death of his wife, which occurred about two years after Sallie was removed there, James Motley also resided at his mother's house. And though there is some testimony that he, up to a short time before his death, denied that Sallie was his child, we are of the opinion the evidence establishes the fact that he not only treated, supported, and cared for her as his child, but recognized her as such.

But there is no direct evidence he ever made any agreement with her mother to raise and support

Sallie, and the existence of such agreement can only be inferred.

We are not, however, authorized to infer, in the absence of proof, that the agreement, if it ever was made, amounted to an undertaking to adopt her as his child to the extent of making her capable of inheriting as his heir-at-law.

The only manner in which that might have been effectually and legally done is provided in section 17, chapter 31, General Statutes; and even if there had been a distinct and solemn agreement by him with her mother to make Sallie his heir-at-law, it could not be specifically enforced, as sought by the plaintiff in this action, a compliance with the terms of the section referred to being indispensable in order to establish such relation. No recovery in damages for an agreement violated is sought in this action, and even if it had been, there is not sufficient evidence to justify it.

The circumstances of this case do not authorize us to infer that James Motley ever agreed, if he made any agreement at all, to do more than maintain and support his bastard child, and the evidence shows he did do that up to the time she married, at the age of twenty-two years.

There is no evidence whatever to sustain the allegations contained in the second paragraph of the petition.

The plaintiffs do not prove that James Motley contemplated or intended at any time to make a will. On the contrary, two witnesses testify that he expressed an intention not to do so; nor is there any

evidence showing, or tending to show, that E. C. Motley ever promised or agreed with his father to divide the estate equally with his sister, or that James Motley was influenced in the slightest degree to refrain from making a will by any thing done or said by E. C. Motley. It is unnecessary, therefore, to determine what would be the equitable rights of Sallie Willoughby in a state of case not shown by the evidence.

The division of the household and other personal effects by E. C. Motley with his sister, after the death of his father, can be construed as nothing more than a mere gratuity on his part, and does not prove or amount to an enforceable agreement to divide the land and money, one-half of which the plaintiffs seek to recover in this action.

Whatever moral claim the circumstances of this case show Sallie Willoughby had upon her father, and may now have upon her brother, it is not necessary for this court to determine. It is sufficient that she can not recover in this action as the record is presented.

Judgment affirmed.