### Vanover, By et al. v. Steele, et al.

(Decided January 9, 1917.)

## Appeal from Pike Circuit Court.

1. Bastards—Proceeding to Bastardize Child.—In order to bastardize a child born in wedlock or thereafter within the period of gestation, it must be shown by those asserting illegitimacy that the husband could not possibly have been the father of the child.

2. Bastards—Presumption of Legitimacy—Evidence.—Proof that the mother of the child was divorced from the father upon the ground of her adultery; that the father denied his parentage of the child; that the reputation of the mother, for chastity, was bad; and that it was rumored in the neighborhood that another was the father of the child, is totally inadequate and insufficient to overcome the legal presumption of legitimacy always indulged where the possibility of legitimacy exists.

3. Appeal and Error—Evidence of Title—Practice.—In order to take advantage of the failure to file written evidences of title, as required by section 499 of the Civil Code, a motion to that effect must have been made in the trial court, and in the absence of such motion the defect is held to have been waived.

4. Infants—Judgment Affecting Right of.—An agreed judgment in an action, to which an infant was not a party, adjudging the mother of his half-brother the owner, as heir of her deceased son, of his

interest in land, can not affect the right of the infant to assert his interest therein in a subsequent action.

5. Infants—Extent of Recovery in Certain Cases.—In an action between an infant and the grantee of his father's widow, the question whether or not the widow's deed was void as to her dower interest in the father's land is immaterial, as he can only recover his own interest therein, which is subject to her dower rights.

6. Infants—When Cannot Recover Against Purchaser.—Where the ancestor resided upon land which he had purchased under a verbal agreement, and upon which he had paid part of the purchase price, and which was, after his death, conveyed to some of his children, who paid the balance of the purchase price; held, that, as the ancestor did not have title to the land nor a contract upon which he could have enforced a conveyance, a child not included in the conveyance could not recover against a purchaser from those holding the record title.

A. F. CHILDERS for appellants.

J. S. CLINE and ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

W. B. Vanover died intestate, in 1902 or 1903, a resident of Pike county, Kentucky, the owner and in possession of several tracts of land. He had been married three times, all three of his wives surviving him, the first two having been divorced. His first wife is now Dicey Osborn, his second wife is now Lottie Blankenship, and his third wife, London Estepp. As a result of the first marriage, three sons, Crit Vanover, Denny Vanover and W. H. Vanover, were born. W. B. Vanover was married to his second wife, Lottie, on the 11th day of April, 1901, divorced from her, upon the ground of her adultery, in October, 1901, and within a few days thereafter married his third wife, with whom he was living at the time of his death.

In 1908, William Vanover, Sr., the father of W. B. Vanover, died intestate, the owner and in possession of a tract of land in Pike county. On the 11th day of January, 1902, the second wife of W. B. Vanover, Lottie, gave birth to a son, Samuel. In 1912, this son of W. B. Vanover's second wife, Lottie, who was born just nine months after her marriage to W. B. Vanover, claiming to be the son of W. B. Vanover, and suing by his mother, Lottie Blankenship, as next friend, instituted three separate actions in the Pike Circuit Court for the sale and partition of the lands left by W. B. Vanover

and William Vanover, Sr., alleging that, as the son and heir of W. B. Vanover, he was the owner of an undivided one-third interest in the lands of W. B. Vanover and an undivided one-sixteenth interest in the lands of William Vanover, Sr.

After the death of W. B. Vanover and prior to the institution of these three suits, the lands of W. B. Vanover had been sold and conveyed by his widow, London Estepp, two of the sons by the first marriage, Crit Vanover and Denny Vanover, and Dicey Osborn, the first wife, who attempted to convey, as his sole heir, the interest of her third son, W. H. Vanover, who died after his father's death. All of the parties having any interest in the several tracts, as heirs or purchasers from heirs of W. B. Vanover and William Vanover, Sr., were made defendants to these actions, respectively.

As a defense to these actions, which were consolidated below and tried together, it was denied that the plaintiff, Samuel Vanover, was the son or heir of W. B. Vanover or that he had any interest in any of said lands. This was the principal defense to each of these actions, and, if sustained, defeats all claim of appellant to any of the lands involved. To this question we shall, therefore, first address our attention, although other collateral questions will have to be decided, in view of our conclusion that Samuel Vanover is a legitimate child and heir of W. B. Vanover.

The rule is now thoroughly established in this state, and, with but slight variations, in all other jurisdictions, that in order to bastardize a child born in wedlock or, thereafter, within the period of gestation, it must be shown by those asserting illegitimacy, that, for some reason, such as non-access or impotency or the like, the husband could not possibly have been the father of the child. The rule was stated in the syllabus of Sergent v. North Cumberland Mfg. Co., 112 Ky. 888, thus:

"As a general rule, a child born in lawful wedlock, when its mother is living with her husband, and they have opportunity for coition, is conclusively presumed to be legitimate; and, while exceptions are allowed to this rule, the burden of proof in such case is upon the one asserting illegitimacy, it being necessary for him to show that the husband could not possibly have been the father of the child."

See also Dannelli v. Dannelli, 4 Bush 51; Goss v. Froman, 89 Ky. 318.

It is satisfactorily shown in the evidence, practically without contradiction, that Samuel Vanover was born to Lottie Vanover in exactly nine months from the date of her marriage to W. B. Vanover; that W. B. Vanover and Lottie Vanover lived together as husband and wife for from two to four months from the date of their marriage, and there is no attempt to show impotency, non-access or any other reason why W. B. Vanover could not reasonably have been the father of this child. The proof upon which the illegitimacy of the child is predicated consists of the fact that W. B. Vanover procured a divorce from the mother upon proof of her adultery, within a short time before and after his marriage to her; that he denied his parentage of the child; that the reputation, for chastity, of the mother was, and had been for a long time theretofore, bad, and that it was rumored in the neighborhood that another was the father of the child. This evidence, at most, does no more than create a suspicion that W. B. Vanover may not have been the father of the child, but it is totally inadequate and insufficient to overcome the legal presumption of legitimacy always and everywhere indulged where the possibility of legitimacy exists, as is conclusively proven to have existed here. It, therefore, results that the chancellor erred in dismissing appellant's petition, if he did so upon the ground of the child's illegitimacy.

2. It is urged by counsel for appellees that the chancellor may and should have dismissed the petition because of the failure of appellant to file written evidences of title to the land, as required by section 499 of the Civil Code of Practice. But this failure is also insufficient to warrant a dismissal, because, in order to take advantage of the failure to file the written evidences of title, as required by the code, a motion to that effect must have been made in the trial court. Bartee v. Edmunds, 29 Ky. Law Rep. 872. Moreover, appellees plead that W. B. Vanover and William Vanover, Sr., from whom they deduce their title, were the owners, respectively, of the tracts of land in controversy, when they died, and from which they attempt to exclude appellant upon the ground that he is not the heir of W. B. Vanover, by which pleadings it is conceded that the title to the lands involved was in the common source from which both parties claim title; and appellees can not now sustain an erroneous judgment by reason of

the failure of appellant to file written evidences of title, the right to insist upon which they waived by failure to make the question in the trial court.

3.    W. H. Vanover, one of the three sons by the first marriage, died June 19th, 1910, and, thereafter, Dicey Osborn, his mother, attempted to convey to the appellee Steele his undivided interest in the lands in controversy, upon the theory that she was his sole heir. This would have been true, if he had been of age when he died (Ky. Stat., Sec. 1393), but if he died before attaining his majority, his interest in the lands derived from his father, descended to his brothers rather than his mother (Ky. Stat., Sec. 1401). Crit Vanover and Denny Vanover each testified that W. H. Vanover was nineteen years, one month and fourteen days of age when he died; they fix his age by reference to their own ages; his mother states that he was born on the fifth day of May, but she cannot give the year. She testified, however, that he was not twenty-one years of age at his death, but was then about seventeen years of age. No record was made of his birth, but these parties, his brothers and mother, are the only witnesses who even attempted to state that they knew his age. Several witnesses testified that their information was that he was of age when he died; one witness stated that Dicey Osborn, his mother, had told her that he was twenty-one years old on May 5th, before he died June 19th, 1910. The preponderance of the evidence is clearly that W. H. Vanover was not of legal age when he died. His brothers, rather than his mother, are, therefore, his heirs, his half-brother, Samuel Vanover, however, taking only half a share with his brothers of the whole blood. Ky. Statutes, Sec. 1395; Talbott v. Talbott, 17 B. Mon. 1; Milner v. Calvert, 1 Met. 472; King v. Middlesboro T. & L. Co., 106 Ky. 73.

The fact that an agreed judgment, in the case of Crit Vanover v. Steele, adjudged the interest of W. H. Vanover, in certain land involved here, to have descended to his mother, Dicey Osborn, is not a bar to these actions, because the plaintiff here, Samuel Vanover, was not a party to that action.

4.    Counsel for appellant insist that the deed to appellee Steele, who purchased of the widow, now London Estepp, her dower interest in the lands owned by W. B. Vanover at his death, is void, because, at the

time the conveyance was made therefor, London Estepp was a married woman and her husband did not join in the deed as required by statute. While it is not entirely clear, on the evidence, that she was a married woman at the time she made this deed, whether she was or not or whether the deed to Steele of the dower interest was void, is immaterial in this action, because appellant is not entitled to any part of her interest in the land, and is entitled to recover only his own interest therein, which is subject to her dower rights.

5. The small tract of land upon which W. B. Vanover was residing when he died and upon which Steele now resides, containing about fifteen or sixteen acres, was purchased by verbal contract from one Damron, to whom W. B. Vanover had paid all of the agreed purchase price except forty dollars. While W. B. Vanover had the possession of this land, he did not have title thereto, nor a contract upon which he could have enforced a conveyance of same to him. After his death, upon the payment of the balance of the purchase money by Crit Vanover, Damron conveyed this tract of land to Crit Vanover, Denny Vanover and W. H. Vanover. Steele thereafter acquired the interests of Crit and Denny Vanover in the land, but did not obtain the interest of W. H. Vanover as we have seen the deed from Dicey Osborn was ineffectual to convey the interest of W. H. Vanover. We, therefore, conclude that in this tract Samuel Vanover inherited no interest from his father, who never had title thereto, but did inherit from his brother, W. H. Vanover, who owned a third interest therein.

For the reasons indicated, the judgment is reversed, with directions to enter a judgment in favor of appellant, in accordance with this opinion.